IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID BOTTKE, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STATE FARM FIRE AND CASUALTY | : | |
| CO., | : | No.   08-1259 |
|     Defendant. | : | |

**MEMORANDUM AND ORDER**

**Schiller, J.**                                                                                                                         **January 22, 2009**

Plaintiff David Bottke brings this action against Defendant State Farm Fire and Casualty Company ("State Farm"), alleging that State Farm breached its insurance contract with him and violated Pennsylvania's Bad Faith Statute, 42 Pa. Cons. Stat. Ann. § 8371 (2008). Currently before the Court is Defendant's motion for partial summary judgment on Plaintiff's bad faith claim. For the following reasons, Defendant's motion is granted.

**I.    BACKGROUND**

    **A.    Facts**

Plaintiff has a homeowner's insurance policy, as well as several endorsements to that policy, with Defendant. (Def.'s Mot. for Partial Summ. J. [hereinafter "Def.'s Mot."] ¶ 8.) On February 16, 2007, the furnace in Plaintiff's home broke, causing the pipes to freeze and burst, resulting in water damage to his home. (Id. ¶ 9; Pl.'s Resp. to Def.'s Mot. for Partial Summ. J. [hereinafter "Pl.'s Resp."] Ex. C [Letter from AMC Plumbing] & Ex. D [Claim Log] at SF084.) Plaintiff reported the loss to State Farm that same day. (Def.'s Mot. ¶¶ 9-10.) On February 20, 2007, Alice Hoffman, the

State Farm representative handling Plaintiff's claim, and James Wagner, Plaintiff's public adjuster, inspected Plaintiff's home. (*Id.* ¶¶ 10, 16; Claim Log at SF083.) Wagner also called a contractor, FloorWorks, to perform emergency services, including drywall and flooring removal. (Def.'s Mot. ¶ 16; Claim Log at SF083.) At some point after inspecting the property, Wagner submitted an estimate of $87,728.31 to State Farm for the loss. (Pl.'s Resp. Ex. F [Wagner Estimate].)

After an initial inquiry, State Farm determined that Plaintiff's loss was covered.[1] (Def's. Mot. ¶¶ 15, 24; Claim Log at SF077; Def.'s Mot. Ex. E [Feb. 20, 2007 Letter].) Accordingly, State Farm issued payment to FloorWorks for the emergency services it performed, issued Plaintiff an advance payment that he had requested, and scheduled a time for a building contractor, Madsen Kneppers & Associates ("MKA"), to perform an inspection. (Def's. Mot. ¶¶ 24-25; Claim Log at SF077, SF082.) On April 20, 2007, Ron Mahon of MKA and Wagner inspected the water damage to Plaintiff's house. (Claim Log at SF076.) After inspecting the property, Mahon requested, from State Farm, FloorWorks's supporting documentation for the loss and a copy of a report completed by the HVAC contractor, who inspected the property on March 2, 2007. (*Id.* at SF075, SF083.) Hoffman followed up accordingly. (*Id.* at SF075.)

State Farm received a copy of MKA's estimate on June 4, 2007. (*Id.* at SF073.) The estimate states, under the heading "General Notes," that it was "derived from repair recommendations based on the following": (1) "a site investigation performed by MKA on April 20, 2007"; (2) "site notes, phote [sic] documentation and take-offs at the time of inspection"; and (3) "discussions with David Bottke (homeowner) and James Wagner from Alliance Adjuster Group." (Pl.'s Resp. Ex. E [MKA Estimate] at SF138.) The estimate describes the damage as follows: "On

---

[1] Plaintiff does not take issue with State Farm's initial investigation into coverage.

February 16, 2007 a frozen water pipe was discovered to have burst in the baseboard heater on the east wall of the left (east) front bedroom. The house sustained water damage." (*Id*.) The scope of the estimate "include[d] replacement of water damaged materials throughout the house," which MKA estimated to be $37,687.87. (*Id.* at SF137-138.)

After reviewing MKA's estimate and comparing it with Wagner's estimate, Hoffman sent a letter to Plaintiff on June 21, 2007, enclosing payment of $21,509.98 per the MKA estimate with some adjustments and attaching a copy of the estimate for Plaintiff's review. (Claim Log at SF073, SF234; Def.'s Mot. Ex. L [June 21, 2007 Letter].) The June 21, 2007 letter explained that State Farm had deducted from the MKA estimate the amount that State Farm already paid to Plaintiff and amounts attributable to a prior overlapping loss.[2] (Def.'s Mot. ¶ 29; June 21, 2007 Letter.) The letter also explained that State Farm had adjusted the estimate for depreciation and to include twenty-percent overhead and profit instead of the fifteen-percent figure used by MKA. (June 21, 2007 Letter.)

On October 24, 2007, Hoffman and Michael Pacchione, Hoffman's team manager, met with Wagner to reinspect the property and discuss their differing estimates. (Def.'s Mot. ¶ 33; Claim Log at SF068.) State Farm contends that Wagner agreed to review and revise his estimate, while Plaintiff asserts that Wagner only agreed to review his estimate and revise if appropriate. (Def.'s Mot. ¶ 33; Claim Log at SF068; Pl.'s Resp. Ex. A [Wagner Aff.] ¶ 10.) Irrespectively, Hoffman and Pacchione subsequently spoke with Ron Mahon of MKA and requested a revised estimate based on their

---

[2] The parties agree that the property was previously damaged by fire and that the two losses overlap to some extent. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Partial Summ. J. [hereinafter "Pl.'s Mem."] at 1 n.1.) MKA's estimate regarding the instant claim included the costs of restoring the previously damaged areas. (MKA estimate at SF138.)

discussions with Wagner. (Claim Log at SF067.) State Farm ultimately paid Plaintiff an additional $1,245.07 based on MKA's revised estimate. (Def.'s Mot. ¶ 38; Def.'s Mot. Ex. S [Nov. 28, 2007 Letter].) The revised estimate, which was included in a November 28, 2007 letter to Wagner with State Farm's additional payment, contains the same general notes and damage description as the initial estimate. (Nov. 28, 2007 Letter.)

Shortly after the October 24, 2007 meeting, Wagner advised Hoffman of additional damages. (Def.'s Mot. ¶ 34; Def.'s Mot. Ex. P [Oct. 28, 2007 Letter].) Wagner reported that FloorWorks recommended removal of part of the second floor hall bathroom walls, and that Plaintiff's plumber, AMC Plumbing, discovered two additional leaks that needed repair. (Oct. 28, 2007 Letter.) Plaintiff also submitted an invoice from AMC plumbing for $5,000.00 for the repair of the broken pipes. (Def.'s Mot. Ex. R [Letters Regarding Invoice]; Letter from AMC Plumbing.) After speaking with Charlie Heiland of AMC Plumbing to ensure that the repairs related to Plaintiff's loss, Hoffman sent Wagner a check for $5,000.00 to cover the repairs. (Def.'s Mot. ¶ 36; Claim Log at SF066-67; Letters Regarding Invoice.)

On November 19, 2007, Wagner sent Hoffman a letter requesting that she add to the estimate the cost of tearing out the walls in the second floor hall bathroom. (Def.'s Mot. ¶ 37; Def.'s Ex. S [Nov. 19, 2007 Letter].) Hoffman followed up with Mahon of MKA regarding whether tearing out these walls was necessary as a result of Plaintiff's loss. (Claim Log at SF065.) In a December 5, 2007 letter, Hoffman informed Wagner that, based on MKA's opinion, State Farm did not consider the removal of walls necessary. (Def.'s Mot. Ex. T [Dec. 5, 2007 Letter].)

On February 11, 2008, Plaintiff filed his Complaint in state court. Defendant subsequently removed the matter to this Court. The case was initially sent to arbitration; Plaintiff appealed for a

4

trial *de novo*, which is scheduled for January 26, 2009.

    **B.    Contentions**

The parties do not dispute that Plaintiff's property was damaged on February 16, 2007 nor do they dispute that the loss is covered — indeed, they agree that State Farm paid Bottke $42,307.75 in connection with his claim.[3] (Def.'s Mot. ¶¶ 7, 24.) Instead, the parties dispute the scope of repairs and method of repairs necessary to properly restore Plaintiff's property. This will be the focus of Plaintiff's breach of contract claim at trial. The focus of the instant motion, however, is Plaintiff's bad faith claim. Plaintiff claims that when Hoffman hired MKA, she falsely represented that there was only one leak at Plaintiff's house when she knew that there were several. According to Plaintiff, this led MKA's representative, who inspected Plaintiff's property and prepared an estimate accordingly, to drastically underestimate the cost of the repairs. Thus, Hoffman was aware that MKA had underestimated the extent of Plaintiff's loss and State Farm therefore acted in bad faith in relying on the estimate (thereby denying Plaintiff additional monies he is entitled to) because State Farm knew it to be inaccurate.

This allegation of bad faith — Hoffman's alleged misrepresentation of the number of leaks — is the sole basis for Plaintiff's bad faith claim on summary judgment. Although Plaintiff's Complaint alleged seventeen examples of State Farm's bad faith, Plaintiff pursues none of these on summary judgment. In fact, at oral argument, Plaintiff's counsel suggested that he only learned of a basis for his bad faith claim at the arbitration in this case. In other words, Plaintiff's counsel seems to imply that he had no basis for his bad faith claim when he filed it.

In support of his bad faith claim, Plaintiff relies primarily on a statement from Wagner in

---

[3] State Farm also paid Bottke for additional living expenses, which are not at issue here.

which Wagner attests that he, Hoffman and Pacchione were in agreement that the damage to Plaintiff's home was caused by several, not just one, pipes that burst, but that he "hear[d] the representative from MKA say that he was told by Alice Hoffman that there was only once [sic] leak in the property." (Wagner Aff. ¶¶ 11, 13.) Wagner further attests that "Hoffman herself . . . admitted that she told MKA that there was only one leak" and that "[t]he MKA representative also conceded that had he been told the truth about the number of leaks it would have affected his estimate." (*Id.* ¶¶ 13-14.) At oral argument, Plaintiff's counsel explained that he had not deposed Hoffman or Wagner, but alleged that these statements were made in the course of the arbitration (of which there is no transcript). Defendant, of course, disputes that Hoffman specifically represented that there was only one leak on the property and disputes Wagner's account of the MKA representative's testimony. In support of his theory, Plaintiff also relies on a letter from AMC Plumbing to Wagner, which indicates that *multiple* pipes at Plaintiff's house needed repair, and MKA's estimate, which, in its description of the damages, notes that "*a* pipe was discovered to have burst" at Plaintiff's property. (Letter from AMC Plumbing; MKA Estimate at SF138 (emphasis added).)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party

demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

### III.   DISCUSSION

Pennsylvania's Bad Faith Statute provides a cause of action when an insurer "act[s] in bad faith towards the insured." 42 PA. CONS. STAT. ANN. § 8371. In the insurance context, "bad faith" is defined as "any frivolous or unfounded refusal to pay proceeds of a policy." *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (quoting Black's Law Dictionary 139 (6th ed. 1990)). In order to prevail on a bad faith claim, an insured must show that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying those benefits. *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 505 (3d Cir. 2004) (citing *Terletsky*, 649 A.2d 680). To constitute bad faith for the failure to pay a claim, the insurer must have a dishonest purpose. *The Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005). Although the refusal to pay need not be fraudulent, mere negligence or bad judgment is insufficient. *Id*.

The burden rests with the insured to show bad faith by clear and convincing evidence. *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 528 (3d Cir. 1997). To satisfy this standard,

the insured must present evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999); *Terletsky*, 649 A.2d at 688 ("[B]ad faith must be proven by clear and convincing evidence and not merely insinuated."). The clear and convincing standard raises the insured's burden in opposing a summary judgment motion "because the court must view the evidence presented in light of the substantive evidentiary burden at trial." *Babayan*, 430 F.3d at 137 (internal quotations omitted). Furthermore, since the essence of a bad faith claim is the denial of benefits without good reason, an insurer is entitled to summary judgment if it can show a reasonable basis for its actions. *See Jung v. Nationwide Mut. Fire. Ins. Co.*, 949 F. Supp. 353, 360 (E.D. Pa. 1997); *Quaciari v. Allstate Ins. Co.*, 998 F. Supp. 578, 581 n.3 (E.D. Pa. 1998), *aff'd*, 172 F.3d 860 (3d Cir. 1998) (Table).

State Farm argues that Plaintiff cannot prevail on his bad faith claim because it did not deny his claim, and in fact, paid a substantial sum to cover the loss. Alternatively, State Farm argues that even if Plaintiff's bad faith claim is cognizable, it fails because State Farm "promptly processed, investigated, and resolved Plaintiff's concerns and paid him all amounts due under his policy," and acted reasonably in reliance on MKA's estimates.[4] (Def.'s Mot. at 12, 14.) Plaintiff counters that bad faith claims are not limited to claim denials and that he has produced sufficient evidence of bad faith since Hoffman misrepresented crucial facts to the contractor she retained to examine the damage.

An insurer need not deny a claim outright to trigger liability under the Bad Faith Statute. *See*

---

[4] Defendant's motion does not address Plaintiff's misrepresentation theory, presumably because it was unaware of this new allegation which, as noted above, Plaintiff developed in the wake of the arbitration.

*UPMC*, 391 F.3d at 506 ("While the alleged bad faith *need not be limited to the literal act of denying a claim* . . . the essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits.") (emphasis added); *Robbins v. Metro. Life Ins. Co.*, Civ. A. No. 08-0191, 2008 WL 5412087, at *7 (E.D. Pa. Dec. 29, 2008) ("[A] bad faith claim does not require the denial of benefits; rather, a plaintiff can ultimately receive benefits from the defendant and still allege bad faith based on the temporary denial or suspension of benefits."); *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999) ("[S]ection 8371 is not restricted to an insurer's bad faith in denying a claim."). Accordingly, the mere fact that State Farm did not deny Plaintiff's claim outright does not insulate it from a bad faith claim. *See Hollock v. Erie Ins. Exch.*, 842 A.2d 409 (Pa. Super. Ct. 2004) (upholding finding of bad faith where insurer, among other things, arbitrarily valued plaintiff's claim).

However, this does not mean that Plaintiff's bad faith claim overcomes summary judgment. Plaintiff's claim rests almost entirely on two paragraphs of his public adjuster's statement — that Wagner heard an MKA representative, presumably Mahon, state that Hoffman told him there was only one leak on the property and that Mahon's estimate would have been higher had he known the truth, i.e., that there were multiple leaks. Although Plaintiff also points to MKA's initial estimate as additional evidence in support of his theory, because the estimate notes that "[o]n February 16, 2007 *a* frozen water pipe was discovered to have burst," the document expressly states that it was based on the April 20, 2007 inspection of the premises, notes and photographs taken at the inspection, and discussions with Plaintiff and Wagner, who were presumably vigilant in ensuring that Mahon appreciated the extent of damage to the property. (MKA Estimate at SF138 (emphasis added).) There is no mention of Ms. Hoffman and no indication that anything she might have

9

conveyed to MKA was considered when figuring the estimate. Furthermore, nothing about MKA's estimate suggests that it was predicated on the number of pipes that burst, rather than the damages caused to Plaintiff's home. Instead, the estimate was for "replacement of water damaged materials *throughout the house*." (*Id.* (emphasis added).)

Even taking as true that Hoffman told MKA that there was only one leak on Plaintiff's property and that this statement somehow adversely impacted MKA's estimate, there is no evidence that Hoffman acted in bad faith. Indeed, this Court asked Plaintiff's counsel at oral argument how knowledge of multiple leaks would have altered the contractor's estimate, but he was unable to render an explanation other than to generally suggest that the estimate would have been higher. Furthermore, the number of leaks is irrelevant given the contractor's review of the damage caused, especially since State Farm paid the plumber to fix the leaks and that the parties sole dispute now is the cost of repairs to the home.

In this respect, this case is distinguishable from *Atiyeh v. Liberty Mutual Fire Insurance Co.*, 185 F. Supp. 2d 436 (E.D. Pa. 2002), on which Plaintiff so heavily relies. In *Atiyeh*, the plaintiff sustained personal injuries in a car accident. The defendant-insurer initially paid upwards of twenty-thousand dollars in wage loss benefits to the plaintiff. Nine months after the accident, one of defendant's agents decided to request an independent medical examination ("IME") and contacted Concentra Medical Examinations, a vendor used by the insurer, in that regard. The doctor whom the vendor selected to perform the IME received the file, which included a referral letter cc'ing defendant's agent and stating that: "Claimant is not working. Address return to work issues. Restrictions. Anticipated duration of any restrictions. Timeframes for reasonable full and partial disability status. Please see enclosed pictures of claimant's car depicting very minimal damage!

Claimant has been out on disability for 9 months now!" *Id.* at 438 (quoting referral letter). The doctor's post-IME report opined that the plaintiff was not disabled and was capable of performing the responsibilities of her job, and the insurer terminated the plaintiff's wage loss benefits on that basis.

The insurer moved for summary judgment on the plaintiff's bad faith claim, but the court denied the motion, concluding that an issue of material fact existed as to "whether the IME was a reasonable basis for Defendant to discontinue Plaintiff's wage loss benefits, because [the doctor performing the IME] may have been unduly influenced by the statements on the Concentra referral letter." *Atiyeh*, 185 F. Supp. 2d at 440. This was because the letter suggested to the doctor how he should opine as to the plaintiff's condition.

The evidence in this case falls far short of the evidence of bad faith in *Atiyeh*. Whereas the *Atiyeh* plaintiff could point to a smoking gun, Plaintiff here relies on unwarranted conjecture. In *Atiyeh* there was a rational basis for concluding that the letter indicating that the insured sustained minimal damage, insinuating that her disability was questionable, and requesting that the doctor "address return to work issues" suggested to the doctor that he should opine that the insured was not, in fact, disabled. In contrast, a jury could not reasonably infer that Hoffman's alleged statement that the contractor should investigate "*a*" leak at Plaintiff's house was intended to influence an estimate intended to repair the Plaintiff's home based on the damage sustained, especially since the estimate does not suggest any foul play on its face. Indeed, Plaintiff himself cannot articulate how the estimate was affected by this alleged misrepresentation. Furthermore, State Farm acted in good faith by meeting with Wagner, having MKA revise its estimate, paying additional funds to Plaintiff, and promptly paying for the plumber's repairs to fix the multiple leaks. Without clear and convincing

evidence from which a jury could conclude that Hoffman manipulated the MKA estimate, State Farm can show a reasonable basis for its actions. Accordingly, summary judgment is warranted on Plaintiff's bad faith claim. *See Albert v. Nationwide Mutual Fire Ins. Co.*, Civ. A. No. 99-1953, 2001 WL 34035315, at *7 (M.D. Pa. May 22, 2001) (granting summary judgment on plaintiff's bad faith claim because "[a]n issue of fact exist[ed] as to the actual value of the loss, but the Plaintiffs have failed to show by clear and convincing evidence that Defendants acted in bad faith by providing Plaintiffs with their estimate").

## IV.     CONCLUSION

Since Plaintiff falls far short of establishing that Defendant acted in bad faith, summary judgment is warranted. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID BOTTKE, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| STATE FARM FIRE AND CASUALTY CO., | : | No.    08-1259 |
| Defendant. | : | |

# ORDER

AND NOW, this **22nd** day of **January, 2009**, upon consideration of Defendant's Motion for Partial Summary Judgment and Plaintiff's Response thereto, after oral argument on January 21, 2009 and for the foregoing reasons, it is hereby **ORDERED** that:

1. Defendants' motion (Document No. 25) is **GRANTED**.

2. Plaintiff's bad faith claim is hereby **DISMISSED**.

BY THE COURT:

_____
**Berle M. Schiller, J.**